UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DIANA C. SAUNDERS,
    Plaintiff,

    v.                                CIVIL ACTION NO.
                                         21-10106-MBB

DENIS R. MCDONOUGH,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION TO DISMISS (DOCKET ENTRY # 18);**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**
**(DOCKET ENTRY # 28)**

**October 18, 2021**

**BOWLER, U.S.M.J.**

Pending before this court are two motions: 1) a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") and Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), filed by defendant Denis R. McDonough, the Secretary of the Department of Veterans Affairs (the "Secretary") (Docket Entry # 18); and 2) a motion for leave to file an amended complaint filed by pro se plaintiff Diana C. Saunders ("plaintiff") (Docket Entry # 28). This court took the motion to dismiss under advisement after conducting a hearing on August 2, 2021. (Docket Entry # 30). Plaintiff has not filed an opposition. Defendant opposes plaintiff's motion for leave to file an amended complaint. (Docket Entry # 31). This memorandum and order addresses both

pending motions.

PROCEDURAL HISTORY

Plaintiff filed pro se a complaint for employment discrimination on January 20, 2021 (the "initial complaint"), asserting federal question jurisdiction and naming three individuals as defendants.  (Docket Entry # 1).  The initial complaint consisted of a standard form designed for pro se plaintiffs in civil actions, to which plaintiff attached a timeline of facts that she prepared (the "timeline") and an 82-page exhibit of various records (e.g., copies of emails and letters).  (Docket Entry ## 1, 1-2, 1-3).  Plaintiff did not plead or otherwise indicate that she had filed a charge with, or received a right-to-sue letter from, the Equal Employment Opportunity Commission ("EEOC") or an Equal Employment Opportunity ("EEO") counselor regarding the alleged discriminatory conduct.  See generally (Docket Entry # 1).  The exhibit contains documents that refer to a EEO complaint and EEO "activity"[1] but does not include a copy of a charge filed with, or a right-to-sue-letter issued by, the EEOC or an EEO counselor.  See (Docket Entry # 1-3).

On April 15, 2021, plaintiff filed a motion to amend the initial complaint to substitute the Secretary in place of the

---

[1]   See, e.g., (Docket Entry # 1-3, pp. 1, 16-18, 36-37, 39-41, 43-44, 46, 48, 50-51, 73).

three previously named individuals.[2]  (Docket Entry # 11).  She
did not attach a proposed amended complaint.  See generally
(Docket Entry # 11).  On May 6, 2021, with no opposition from
defendant, this court granted plaintiff's motion to amend.
(Docket Entry # 12).

On June 21, 2021, plaintiff filed a second motion to amend
that included an amended complaint as an attachment (the
"amended complaint") (Docket Entry # 17).  The amended complaint
was on a standard form designed for pro se plaintiffs in
employment discrimination actions.  See (Docket Entry # 17).  A
typed one-page document included at the end, which does not
appear to be part of the standard form but prepared by plaintiff
herself, provides a brief summary of the "[f]acts in [her] case"
and refers to an "EEO case."  (Docket Entry # 17, p. 8).  Like
the initial complaint, the amended complaint did not include a
copy of any charge with, or a right-to-sue letter issued by, the
EEOC or an EEO counselor.[3]  See generally (Docket Entry # 17).

---

[2]  Plaintiff also requested the withdrawal of a duplicative
complaint that she filed in a separate action, which was also in
the United States District Court in Boston.  (Docket Entry #
11).  In response to her request, that court dismissed the case
on June 23, 2021.  Saunders v. McDonough, No. 21-CV-10566-LTS
(D. Mass. June 23, 2021).
[3]  In an excerpted report from May 2014, included in the initial
complaint's exhibit, the Acting Associate Director for
Patient/Nursing Services (Mary Ann Petrillo) referred to an
[Equal Employment Opportunity ("EEO")] case filed by
[plaintiff]."[3]  (Docket Entry # 1-3, pp. 1, 18).  However,
plaintiff notes in the timeline that "[t]here was no EEO case

In the amended complaint, plaintiff indicated (by checking two boxes) that the basis for jurisdiction was Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (the "ADEA").  (Docket Entry # 17, p. 4). She left blank the "Exhaustion of Federal Administrative Remedies" section of the form complaint, which asks plaintiffs to indicate whether: 1) they have filed a charge with the EEOC or an EEO counselor regarding the alleged discriminatory conduct; 2) the EEOC has issued a notice of right to sue; and 3) for age discrimination claims, 60 days or more have elapsed since filing the charge of age discrimination with the EEOC. (Docket Entry # 17, p. 5).  In the "Statement of Claim" section, she indicated (again via checked boxes) that the alleged discriminatory conduct occurred on January 8, 2014 and involved termination of her employment, failure to promote her, and retaliation against her.  (Docket Entry # 17, p. 5).  She also indicated that defendant discriminated against her on the basis of her "gender/sex" and "age."  (Docket Entry # 17, p. 5).  She did not re-attach the 82-page exhibit from the prior complaint. See generally (Docket Entry # 17).

---

filed at this time."  See (Docket Entry # 1-3, p. 1).  There is no indication elsewhere in the timeline that plaintiff later initiated any EEO case.

This court granted plaintiff's second motion to amend on June 26, 2021 (Docket Entry # 20), a day after defendant filed its motion to dismiss (Docket Entry # 18).  The Secretary alleges three reasons for dismissal: 1) with respect to the ADEA and Title VII discrimination claims, plaintiff never exhausted (or attempted to exhaust) her administrative remedies; 2) the alleged retaliatory conduct "cannot be retaliatory as a matter of law because it occurred *before* [her] earliest protected activity"[4]; and 3) the complaint lacks "a plausible inference of wrongdoing"[5] (Docket Entry # 18).  As noted above, plaintiff has not filed an opposition to the motion to dismiss.

On July 23, 2021, plaintiff filed a third motion to amend and attached an amended complaint (the "proposed amended complaint").  (Docket Entry ## 28, 28-1).  The proposed amended complaint is in paragraph format rather than on the standard form of the prior two complaints.  (Docket Entry # 28-1).  Plaintiff also attached a 33-page exhibit.  (Docket Entry # 28-3).  In addition to the claims in the amended complaint (i.e., retaliation and discrimination on the basis of sex and age), the proposed amended complaint alleges the creation of a hostile work environment based on filing a charge of discrimination in

---

[4] See Clark County School District v. Breeden, 532 U.S. 268, 272 (2001) (per curiam).
[5] See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

violation of Title VII and the ADEA (Count IV).  (Docket Entry #
28-1).  The proposed amended complaint also alleges that
plaintiff filed a complaint with an EEO counselor on January 28,
2014, and received a right-to-sue letter from the EEOC on
November 20, 2020.  (Docket Entry # 28, p. 2).  On August 31,
2021, defendant filed an opposition to plaintiff's third motion
to amend the complaint.  (Docket Entry # 31).

I.    Defendant's Motion to Dismiss (Docket Entry # 18)

     The Secretary's first argument in support of dismissal is
that "[t]his court lacks jurisdiction over [p]laintiff's
discrimination claims because [p]laintiff never exhausted, or
attempted to exhaust, those claims."  (Docket Entry # 19, p. 2).
The Secretary's second argument is that the retaliatory conduct
alleged in the amended complaint "cannot be retaliatory as a
matter of law because it occurred *before* [p]laintiff's earliest
protected activity."  (Docket Entry # 19, p. 2).  Lastly, the
Secretary maintains that "all of [p]laintiff's discrimination
and retaliation claims fail because the amended complaint does
not sow a plausible inference of wrongdoing."  (Docket Entry #
19, p. 2).

A.    Failure to Exhaust Administrative
      Remedies for Discrimination Claims

     This court begins its evaluation of the Secretary's motion
to dismiss (Docket Entry # 18) based on the argument that

plaintiff failed to exhaust administrative remedies for her discrimination claims prior to initiating this action.

<u>STANDARD OF REVIEW</u>

Under Rule 12(b)(1), a court "must 'credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.'"  <u>Sanchez ex rel. D.R.-S v. United States</u>, 671 F.3d 86, 92 (1st Cir. 2012) (citation omitted). When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of proving its existence.  <u>Padilla-Mangual v. Pavia Hosp.</u>, 516 F.3d 29, 31 (1st Cir. 2008).  In addition to the well pleaded facts in the complaint, a "district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'"  <u>Merlonghi v. U.S.</u>, 620 F.3d 50, 54 (1st Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007); <u>see</u> <u>Miller v. Town of Wenham Massachusetts</u>, 833 F.3d 46, 51 (1st Cir. 2016).  As with a Rule 12(b)(1) analysis, a court must "'accept as true all well pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs.'"  <u>Gargano v. Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009) (citation omitted).  Courts must assume that only "well-pleaded

factual allegations" are accurate, not "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  Iqbal, 556 U.S. at 678-79; Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).  Assuming only the "well-pleaded factual allegations" as accurate, the "claim" must have "facial plausibility" which is "not akin to a 'probability requirement,' but [] asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678-79. If the facts in the complaint "are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" dismissal is appropriate.  In re Montreal, Maine & Atl. Ry., Ltd., 888 F.3d 1, 6 (1st Cir. 2018).

When evaluating a motion to dismiss, a court may consider, inter alia, "'documents central to the plaintiffs' claim,'" "'documents sufficiently referred to in the complaint,'" and "'documents the authenticity of which are not disputed by the parties.'"  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (citation omitted); see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

The preliminary issue before this court is whether plaintiff's proposed amended complaint should be read in tandem with the initial complaint (which included an 82-page exhibit). In the amended complaint, plaintiff states that she "include[d] some of the paper-trail" and references particular documents.

See (Docket # 17, p. 8).  The "paper-trail," which was not in fact included in the amended complaint, is presumably the collection of documents she attached to the initial complaint. The exhibit to the initial complaint roughly correlates to the one-page summary of at the end of the amended complaint.  See generally (Docket Entry 1-3) (Docket Entry 17).  This court infers that plaintiff intended to amend the initial complaint to simply substitute the Secretary as the sole defendant, while retaining the prior exhibit.

Absent an incorporation of facts into the amended complaint, an amended complaint ordinarily supersedes the predecessor complaint.  See Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 27 n.8 (1st Cir. 2018) ("'An amended complaint, once filed, normally supersedes the antecedent complaint.'") (citation omitted); Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 40 n.2 (1st Cir. 2013) ("[S]ince '[a]n amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader,' we limit our analysis to the allegations made in [the] [s]econd [a]mended [c]omplaint.") (citation omitted).

Pro se plaintiffs, however, are entitled to a liberal construction of their complaints.  Haines v. Kerner, 404 U.S. 519, 520-521 (1972); accord Erickson v. Pardus, 551 U.S. 89, 94

(2007) ("'[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (citation omitted); <u>Dutil v. Murphy</u>, 550 F.3d 154, 158 (1st Cir. 2008) (holding "pro se pleadings to less demanding standards than those drafted by lawyers and endeavor[s], within reasonable limits, to guard against the loss of pro se claims due to technical defects").

Furthermore, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957); <u>see</u> <u>also</u> <u>Rodi v. S. New Eng. Sch. Of Law</u>, 389 F.3d 5, 20 (1st Cir. 2004) ("The view that the pleading of cases is a game in which every miscue should be fatal is antithetic to the spirit of the federal rules."). Accordingly, courts have read amended and original complaints together under the assumption "that [the p]laintiff meant the amended complaint to supplement the original complaint." <u>See, e.g.</u>, <u>Williams v. Aldridge</u>, No. 6:13-cv-6004, 2014 WL 504874, at *2 (W.D. Ark. Feb. 7, 2014) (reading original and amended complaint together because pro se plaintiff might have understood amendment to supplement rather than supersede); <u>Ford v. Donovan</u>, 891 F. Supp. 2d 60, 62 (D.D.C. 2012) (reading pro se plaintiff's initial complaint and amended

complaint together).

Here, in the one-page summary at the end of the amended complaint, plaintiff refers to certain information and records contained in the exhibit to the initial complaint.  See generally (Docket Entry 1-3) (Docket Entry 17, p. 8).  She explicitly references a "paper-trail" in support of her claims, suggesting she intended to incorporate into her amended complaint the various documents and records she collected for the initial complaint.  See (Docket Entry 17, p. 8).  While plaintiff's amended complaint would ordinarily supersede her original complaint and render the exhibit irrelevant, her pro se status entitles her to substantial leniency.  See Haines, 404 U.S. at 520-521; Erickson, 551 U.S. at 94; Dutil, 550 F.3d at 158.  Whether the "paper-trail" she referenced in the amended complaint was meant to include the original exhibit, supplement it, or both, there is a decided preference against outcomes based on an inexperienced litigant's mistakes.  Dutil, 550 F.3d at 158; Rodi, 389 F.3d at 20.

This court will therefore read the amended complaint as supplementing rather than superseding the initial complaint. See Williams, 2014 WL 504874, at *2; Ford, 891 F. Supp. 2d at 62.  Accordingly, the below factual background consists of facts from both complaints.

FACTUAL BACKGROUND

Plaintiff formerly worked as a nursing assistant for the Department of Veterans Affairs at the Edith Nourse Rogers Memorial Veterans Hospital in Bedford, Massachusetts (the "Department"). [6]  (Docket Entry # 1-3, pp. 57, 63, 70).  She "was about to turn 50" when she began encountering problems at work. See (Docket Entry # 17, p. 8) ("I was about to turn 50 [] when this all started [and] before that I had no problems.").  These issues include lost vacation pay, lost sick time pay, lost differentials, lost overtime, promotion without raise, accusations of patient abuse and falling asleep on the job, harassment, ostracism, threats, and ultimately termination. (Docket Entry # 1-3) (Docket Entry # 17, p. 8).  She was also suspended from work on two occasions, leading to a reduction of her usual wages.  See (Docket Entry # 1-3, pp. 16, 81) (Docket Entry # 17, p. 8).

In February 2017, the Department terminated her employment for the stated reasons of "'[e]ndangering the [s]afety of a [p]atient' and ['e]ndangering the [s]afety of a [p]atient [c]ausing [i]nujury.'"  (Docket Entry # 1-3, p. 70).

---

[6]  The timeline begins on January 8th, 2014 and ends in November 2017.  (Docket Entry # 1-3, pp. 1-2).  It is unclear when plaintiff first commenced employment with the Department.

DISCUSSION

The Secretary argues that, as a federal employee, plaintiff "was required to exhaust [her discrimination] claims before filing them in federal court" but failed to do so.  (Docket Entry # 19, p. 6).  As such, the Secretary maintains, "this [c]ourt "lacks jurisdiction to consider those claims now." (Docket Entry # 19, p. 6).

Under the ADEA, it is "unlawful for an employer to 'discharge . . . or otherwise discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's age." Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) (quoting 29 U.S.C. § 623(a)(1)).  Similarly, under Title VII, it is an "unlawful employment practice for an employer ... to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." Rivera-Martinez v. Commonwealth of Puerto Rico, No. 05-cv-2605, 2007 WL 16069, at *2 (1st Cir. Jan. 4, 2007) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Before instituting an ADEA or Title VII action in federal court, a plaintiff must first exhaust administrative remedies. Martinez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 78 (1st Cir. 2016) (explaining that plaintiffs must exhaust

administrative remedies before instituting ADEA action);

Frederique-Alexandre v. Dep't of Nat. & Env't. Res. P.R. 478

F.3d 433, 440 (1st Cir. 2007) (same, as to Title VII) (citation

omitted).  As a first step, a plaintiff "must contact an EEO

counselor within forty-five days of the alleged unlawful

employment practice." Ayala v. Shinseki, 780 F.3d 52, 55 n.6

(1st Cir. 2015); see 29 C.F.R. 1614.105(a)(1).

Exhaustion under both the ADEA and Title VII requires "the

timely filing of a charge with the EEOC," while Title VII also

requires "the receipt of a right-to-sue letter from the agency."

See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005)

(explaining exhaustion under Title VII); Pérez-Abreu v. Metropol

Hato Rey LLC, 5 F.4th 89, 94 (1st. Cir. 2021) (explaining that

"under the ADEA, securing a right-to-sue letter is not a

prerequisite to suit"); 42 U.S.C. § 2000e-5(f)(1).  When

plaintiffs fail to "include an allegation of exhaustion in their

complaints," courts will either dismiss the complaint or permit

amendment of the complaint to include specifics concerning

exhaustion.  See Pérez-Abreu, 5 F.4th at 95.

The scope of the complaint is "limited to the charge filed

with the EEOC and the investigation which can reasonably be

expected to grow out of that charge." Fantini v. Salem State

College, 557 F.3d 22, 26-27 (1st Cir. 2009); see also Velazquez-

Ortiz v. Vilsack, 657 F.3d 64, 71-72 (1st Cir. 2011) (finding

claims for age discrimination and retaliation do not put
defendant on notice of gender discrimination).  Although the
administrative charge is not an exact plan for the succeeding
civil action, "plaintiffs cannot piggyback entirely new claims
onto a subsequent civil case." Valle-Arce v. P.R. Ports
Authority, 632 F.Supp.2d 138, 140 (D.P.R. 2009) (citing Fantini,
557 F.3d at 22); see also Rumsfeld, 404 F.3d at 564 (explaining
that plaintiff had "never filed a Title VII claim with the
EEOC," so "her attempt to piggyback a non-existent Title VII
filing on an ADEA filing d[id] not hold water"); Martinez-
Rivera, 812 F.3d at 78 (finding that a plaintiff who had filed
an EEOC charge for "political and disability discrimination,"
but later initiated an action in federal court for age
discrimination, failed to exhaust administrative remedies).

     The Secretary argues that plaintiff failed to exhaust her
administrative remedies with respect to both the ADEA and Title
VII discrimination claims and that, as a result, this court
lacks subject matter jurisdiction over those claims.  (Docket
Entry # 17, p. 8).  Because he challenges subject matter
jurisdiction, the Secretary further argues, this court can
consider documents outside of the pleadings (i.e. the exhibits
attached to his memorandum of law in support of the motion to
dismiss).  (Docket Entry # 19, p. 8) (citing Hernandez-Santiago
v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005); Coyne v.

Cronin, 386 F.3d 280, 286 (1st Cir. 2004); Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37-38 (1st Cir. 2000)).

The Supreme Court, however, has plainly held that "Title VII's charge-filing instruction is not jurisdictional, a term generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction). Prerequisites to suit like Title VII's charge-filing instruction are not of that character." Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1846 (2019). The same principle applies to ADEA claims. See Pérez-Abreu, 5 F.4th at 95 ("While compliance with the administrative filing requirement is compulsory [for ADEA claims], it is not jurisdictional."). Rather, such prerequisites "are properly ranked among the array of claim-processing rules that must be timely raised to come into play." Davis, 139 S. Ct. at 1846; see also Kale v. Combined Ins. Co., 861 F.2d 746, 751-52 (1st Cir. 1988) (noting that the charge-filing requirement is mandatory, though not jurisdictional). In sum, the ADEA's and "Title VII's charge-filing provisions 'speak to . . . a party's procedural obligations.'" See Davis, 139 S. Ct. at 1851 (quoting E.P.A. v. EME Homer City Generation, L.P., 572 U.S. 489, 512 (2014)).

Given that the exhaustion requirement does not implicate subject matter jurisdiction, Rule 12(b)(6) is a more

"appropriate basis for [considering] a failure to exhaust administrative remedies . . . ."  Montalvo-Figueroa v. DNA Auto Corp., 414 F. Supp. 3d 213, 230 (D.P.R. 2019); see also Martinez-Rivera, 812 F.3d at 73 ("[T]he exhaustion requirements involved here—though compulsory—are not jurisdictional []. Perhaps then the [district court] should have analyzed the case under Federal Rule of Civil Procedure 12(b)(6) (failure to state a claim) rather than under Rule 12(b)(1) (lack of subject-matter jurisdiction)."); Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 2000) ("[T]he District Court should have considered the exhaustion and timeliness defenses presented in the case under Rule 12(b)(6), rather than under Rule 12(b)(1)."); Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 n.4 (5th Cir. 2004) ("Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies."); Innocent v. HarborOne Bank, 319 F. Supp. 3d 571, 572 n.2 (D. Mass. 2018); Maldonado-Cordero, 73 F. Supp. 2d at 185. Accordingly, this court will evaluate the Secretary's arguments for dismissal of the discrimination claims under Rule 12(b)(6). See Montalvo-Figueroa, 414 F. Supp. 3d at 230 (evaluating defendant's argument that plaintiff failed to exhaust administrative remedies under Rule 12(b)(6) instead of Rule 12(b)(1) because exhaustion does not implicate jurisdiction).

As noted above, a court considering a motion to dismiss may

consider documents outside of the complaint if, inter alia, such documents are expressly incorporated therein, "the motion [to dismiss] is converted into one for summary judgment," or "when 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged) . . . .'" Diva's Inc. v. City of Bangor, 411 F.3d 30, 38 (1st Cir. 2005) (citations omitted).  Even if one of these narrow exceptions were to apply here to allow this court to consider the Secretary's exhibits, it would be of little import to this opinion.

First, Plaintiff does not plead sufficient facts in either the initial or amended complaint (including the accompanying documents) indicating that she properly exhausted administrative remedies for her ADEA and Title VII discrimination claims.  Her initial complaint and amended complaint contain only vague references to an EEO case and EEO "activity."  See, e.g., (Docket Entry # 1-3, pp. 1, 16-18, 36-37, 39-41, 43-44, 46, 48, 50-51, 73).  She has not shown (let alone plead) that she filed an administrative charge of age or sex discrimination with the EEOC, a prerequisite to filing in court.  See Martinez-Rivera, 812 F.3d at 78; Pérez-Abreu, 5 F.4th at 95.  She also makes no showing that she initiated contact with an EEO counselor within

45 days of the last instance of any alleged sex discrimination.[7]
See 29 C.F.R. 1614.105(a)(1); Ayala, 780 F.3d at 55 n.6.
Instead, she left blank the "Complaint for Employment
Discrimination" section in both complaints, which asked her to
indicate whether she had filed an EEOC charge or received a
right-to-sue letter.  See (Docket Entry # 17).  The complaint
therefore lacks "enough facts to state a claim to relief that is
plausible on its face."  See Twombly, 550 U.S. at 556, 570
(2007).  Rather, the complaint's facts "are 'too meager, vague,
[and] conclusory to remove the possibility of relief from the
realm of mere conjecture.'"  See In re Montreal, 888 F.3d at 6.

Second, even with consideration of the two exhibits
attached to the Secretary's memorandum of law in support of the
motion to dismiss, plaintiff's discrimination claims fail.
These exhibits are (1) an EEO counselor's report, dated August
15, 2015, indicating that plaintiff brought two claims before
the EEOC for "Harassment/Hostile Work Environment (Non-Sexual)"
and "Disciplinary Action-Suspension" (Docket Entry # 19-1, pp.

---

[7]  The last possible instance of sex discrimination would have
been February 2017 when the Department terminated plaintiff.
(Docket Entry ## 1-3, p. 70).  However, based on plaintiff's
submissions, there is no record showing that plaintiff initiated
contact with an EEO counselor for sex discrimination within 45
days of her removal.  Absent that showing, she has failed to
exhaust administrative remedies.  29 C.F.R. 1614.105(a)(1);
Ayala, 780 F.3d at 55 n.6.  Furthermore, even if she did
communicate with an EEO counselor, there is no record of a
right-to-sue letter regarding sex discrimination.

3-4); and (2) a complaint of employment discrimination, filed
August 19, 2015, for the sole claim of "[b]eing bullied by
man[a]ger and staff" (Docket Entry # 19-2).[8]  Neither the report
nor the complaint indicates that the basis for her claims was
age or sex discrimination.  See generally (Docket Entry ## 19-1,
19-2).  Rather, the basis listed was "Reprisal (No Prior EEOC
Activity found.)."  (Docket Entry # 19-1).  Because she did not
mention age or sex discrimination in her EEOC charge, she failed
to properly exhaust her administrative remedies.  See Martinez-
Rivera, 812 F.3d at 78.

     Thus, plaintiff's ADEA and Title VII discrimination claims
do not belong in federal court because she failed to exhaust her
administrative remedies for both.  See Id.; Pérez-Abreu, 5 F.4th
at 95.  Accordingly, both claims are dismissed.

B.   Failure to State a Claim for Retaliation

     This court will now address the Secretary's second
argument, under Rule 12(b)(6), that plaintiff's retaliation
claim fails because "the conduct alleged in the amended
complaint is not retaliatory as a matter of law."  (Docket Entry

---

[8]   The EEO counselor's report indicated that plaintiff
participated in an initial interview on July 16, 2015 and
received a "Notice of Right to File a Discrimination Complaint"
on August 7, 2015.  (Docket Entry # 19-1, pp. 2, 5).   The
counselor report also indicated that attempts to reach plaintiff
for a final interview were unsuccessful.  (Docket Entry # 19-1,
p. 4).

# 19, p. 9).  (Docket Entry # 18).  The court refers back to the factual background provided above.

Plaintiff alleges retaliatory conduct in 2014[9] but, the Secretary argues, "did not engage in protected activity until 2015."  (Docket Entry # 19, p. 9).  Thus, because "[r]etaliation claims are premised on *preexisting* protected activity, such as contacting an EEO counselor or filing an EEO complaint," the alleged retaliatory conduct here "could not have been retaliatory as a matter of law."  (Docket Entry # 19, p. 9).  In support of these arguments, the Secretary again relies on an exhibit attached to his memorandum of law in support of the motion to dismiss.  (Docket Entry # 19, p. 11) (Docket Entry # 19-2).  That exhibit is an EEOC counselor report from 2015, which postdates the 2014 retaliatory activity plaintiff alleges.  See (Docket Entry # 17 at p. 6) (showing 2014 date); (Docket Entry # 19-2) (showing 2015 date).

The ADEA mandates that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  Under the ADEA, "'[d]iscrimination based on age' includes retaliation based on the filing of an age discrimination complaint."  Gomez-Perez v. Potter, 553 U.S. 474,

---

[9]  See (Docket Entry # 17, p. 6) (indicating that the "alleged discriminatory act(s) occurred on" January 8, 2014).

479 (2008) (citation omitted).  While the Supreme Court and First Circuit have not decided whether Title VII's prohibition against discrimination includes retaliation, the Secretary concedes that "retaliation claims are cognizable against executive agencies under Title VII."  See (Docket Entry # 19, p. 9) (citing Green v. Brennan, 136 S. Ct. 1769, 1774 n.1 (2016); Gomez-Perez, 553 U.S. at 488 n.4); see also Morales-Vallellanes v. Potter, 605 F.3d 27, 35-36 (1st Cir. 2010) ("Title VII does not contain an express antiretaliation provision applicable to the federal government as employer.  Nonetheless, we have assumed that the antiretaliation provision applicable to private employers operates to prohibit retaliation in the federal sector." (citation omitted)).  Additionally, because a retaliation claim is "reasonably related to and grows out of the discrimination complained of," such claim "must be dismissed along with" any related discrimination claims that are dismissed for failure to exhaust.  Franceschi v. U.S. Dep't of Veterans Affs., 514 F.3d 81, 87 (1st Cir. 2008).

Complaints need not set out a prima facie claim to survive a motion to dismiss.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002).  However, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim."  Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013).  "[T]o establish a prima facie case of

retaliation, an employee must show that he engaged in a
protected activity and that he suffered an adverse employment
action as a result of his participation in that activity."
Bennet v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007)
(evaluating ADEA claim); see also Collazo v. Bristol-Myers
Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010) (evaluating
Title VII claim).  Thus, the "relevant conduct is that which
occurred after [plaintiff] complained about his superiors'
[discriminatory conduct]."  Quiles-Quiles v. Henderson, 439 F.3d
1, 8 (1st Cir. 2006) (citing Gregory v. Daly, 243 F.3d 687, 701
(2d Cir. 2001), as amended (Apr. 20, 2001)) (evaluating Title
VII retaliation claim); see generally Serapion v. Martinez, 119
F.3d 982, 985 (1st Cir. 1997) ("We regard Title VII [and the]
ADEA . . . as standing in pari passu and endorse the practice of
treating judicial precedents interpreting one such statute as
instructive in decisions involving another.").

     The employee must "make a colorable showing of a causal
connection between his protected activity . . . and the adverse
employment action . . . ."  Bennet, 507 F.3d 23, 32 (1st Cir.
2007).  Where the retaliation claim is against an executive
agency, the "adverse employment action" must be a "personnel
action."  29 U.S.C. § 633a(a); 42 U.S.C. § 2000e-16; see Gomez-
Perez, 553 U.S. at 486-88.  The causation element is met only
when the protected activity precedes the personnel action or

actions.  E.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268,
272 (2001) (per curiam); Quiles-Quiles, 439 F.3d at 8 (stating
retaliatory action must occur after the protected activity);
Young v. Brennan, No. 16-12001, 2017 WL 1843696, at *6 (D. Mass.
May 8, 2017) (dismissing Title VII retaliation claim because
"plaintiff's discharge occurred prior to the protected
activity").

As before, with or without this court's consideration of
the Secretary's exhibits,[10] plaintiff's retaliation claim fails.
Plaintiff has not made "a colorable showing of a causal
connection between h[er] protected activity . . . and the
adverse employment action . . . ."  See Bennet, 507 F.3d 23, 32
(1st Cir. 2007).  Indeed, she has not plead or otherwise shown
that she engaged in any protected activity at all.  Even if the
vague references to an "EEO case" or "EEO activity" in the
documents appended to plaintiff's two complaints could be
construed as a showing of "protected activity," she has not
alleged or shown that such activity occurred before any

_____

[10]  The EEO counselor report indicates that plaintiff spoke with
a counselor between July and August 2015.  See (Docket Entry #
19-1).  The amended complaint, meanwhile, provides that the
basis for her grievance occurred on "Jan 8, 2014."  (Docket
Entry # 17, p. 6).  However, it is clear the alleged retaliation
did not occur on a single date, but over time.  (Docket Entry #
17, p. 8).  Even so, retaliation claims require that the
personnel action occur after and in reaction to a protected
activity.  See Clark Cnty. Sch. Dist., 532 U.S. at 272; Quiles-
Quiles, 439 F.3d at 8; Young, 2017 WL 1843696, at *6.

personnel action.  See Quiles-Quiles, 439 F.3d at 8 (1st Cir. 2006) (stating retaliatory action must occur after the protected activity).  It is also unclear what particular personnel action or actions plaintiff addresses for the purpose of her retaliation claim.  For these reasons, the retaliation claim is dismissed.  See Young v. Brennan, No. 16-12001, 2017 WL 1843696, at *6 (D. Mass. May 8, 2017) (dismissing Title VII retaliation claim because "plaintiff's discharge occurred prior to the protected activity").

Lastly, because this court has dismissed plaintiff's discrimination claims for failure to exhaust administrative remedies, there is no remaining claim to which plaintiff can bootstrap a retaliation claim.  See Franceschi, 514 F.3d at 87 ("[W]here . . . administrative remedies have not been exhausted with respect to any of the [] Title VII claims in the civil action, there is nothing properly before the court to which the retaliation claim may be bootstrapped.").

C.   Dismissal Under *Iqbal* For Failure to
     Show a Plausible Inference of Wrongdoing

This court need not address the Secretary's third argument for dismissal, having found that the amended complaint already warrants dismissal under Rule 12(b)(6).

II.  Plaintiff's Motion for Leave to File
     Amended Complaint (Docket Entry # 28)

STANDARD OF REVIEW

Leave to amend "shall be freely give[n] ... when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases."  Invest Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 71 (1st Cir. 2001) (internal quotation marks omitted); see also Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390 (1st Cir.2013) ("[T]his [principle] does not mean . . . that a trial court must mindlessly grant every request for leave to amend.") (quoting Aponte Torres v. University of P.R., 445 F.3d 50, 58 (1st Cir.2006)).  Rather, a court "enjoys significant latitude in deciding whether to grant leave to amend" and the court's decision receives deference "if any adequate reason for the denial is apparent on the record."  U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citations omitted).  "Reasons for denying leave to amend include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment."  Trustees of Bos. Univ. v. Everlight Elecs. Co., No. 12-CV-11935-PBS, 2014 WL 12792495, at *3 (D. Mass. Sept. 8, 2014) (citing City of

Worcester, 565 F.3d at 48).

DISCUSSION

In addition to the claims in the prior amended complaint (i.e., retaliation and discrimination on the basis of sex and age), the proposed amended complaint alleges the creation of a hostile work environment based on the filing of a charge of discrimination in violation of Title VII and the ADEA (Count IV). (Docket Entry # 28-1).  The Secretary moves to dismiss plaintiff's motion for leave to amend her complaint (Docket Entry # 28) on three grounds: 1) the "proposed amendment does not comply with basic pleading requirements"; plaintiff "offers no reason for waiting so long to file" an additional amended complaint; and "[p]laintiff's motion to amend should be denied on futility grounds" because the "proposed amendment does not cure any of the defects [the Secretary] demonstrated in his motion to dismiss."  (Docket Entry # 31, p. 2).

This court begins with the Secretary's futility argument. Where, as here, "a plaintiff seeks to amend her complaint prior to the commencement or completion of discovery," futility is measured "through the lens of Federal Rule of Civil Procedure 12(b)(6)."  Parker v. Landry, 935 F.3d 9, 13 (1st Cir. 2019); see Rife v. One West Bank, F.S.B., 873 F.3d 17, 21 (1st Cir. 2017) (explaining that a proposed amendment is futile if the

"'complaint, as amended, would fail to state a claim upon which relief could be granted'" (internal citation omitted)). Accordingly, the proposed amendment "is futile if it fails to 'state a claim to relief that is plausible on its face.'"  See Parker, 935 F.3d at 13 (quoting Twombly, 550 U.S. at 570).

As with the amended complaint (Docket Entry # 17), the proposed amended complaint does not meet the Rule 12(b)(6) standard with respect to the ADEA and Title VII discrimination claims.  In two sentences, plaintiff simply states that she initiated a complaint with an EEO counselor on January 8, 2014 and then received a right-to-sue letter from the EEOC on November 20 2020.  (Docket Entry # 28-1, p. 2).  She alleges that she suffered "multiple adverse employment actions" and was "terminated," at least in part, because of her sex and age. (Docket Entry # 28-1, pp. 2-3).  Nowhere in the proposed amended complaint does she indicate, however, that the EEO complaint and right-to-sue letter were for sex and age discrimination.  She also does not include a copy of either such documents in the 33-page exhibit attached to the proposed amended complaint. Rather, the scattered documents that are included and relate to her contact with an EEO counselor, indicate that she asserted claims for "Harassment/Hostile Work Environment" and "Disciplinary Action-Suspension," both with the listed basis of "Reprisal (No Prior EEO Activity Found)."  (Docket Entry # 28-2,

pp. 25-26).  Because she has not shown that she alleged age and sex discrimination in an EEO charge, and received a right-to-sue letter regarding such claims, plaintiff has failed to allege proper exhaustion of administrative remedies.  See Martinez-Rivera, 812 F.3d at 78.

Lastly, plaintiff's claims for retaliation and the creation of a hostile work environment fail.  In addition to claiming retaliation generally, the proposed amended complaint alleges the creation of a hostile work environment based on the filing a charge of discrimination in violation of Title VII and the ADEA (Count IV).  (Docket Entry # 28-1).  "[A] hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action for purposes of" Title VII.  Noviello v. City of Bos., 398 F.3d 76, 89 (1st Cir. 2005) "This means that workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case [suffering of an adverse employment action] for Title VII retaliation cases."  Id.  The proposed amended complaint alleges that she initiated a complaint with an EEO counselor on January 8, 2014 (Docket Entry # 28-1, p. 2), but does not indicate when the alleged retaliation took place or what is the specific retaliatory conduct.  Not does it plead any facts suggesting when and how plaintiff's employer created a hostile work

environment.  Plaintiff also does not allege that the retaliatory conduct occurred after any protected activity (such as the filing of an EEOC charge).  See Quiles-Quiles, 439 F.3d at 8.  She has therefore not made "a colorable showing of a causal connection between [] protected activity . . . and the adverse employment action . . . ."  See Bennet, 507 F.3d 23, 32 (1st Cir. 2007).  The proposed amended complaint's facts "are 'too meager, vague, [and] conclusory to remove the possibility of relief from the realm of mere conjecture.'"  See In re Montreal, 888 F.3d at 6.

Plaintiff's proposed amendment is therefore futile because it fails to state a claim upon which relief could be granted. See Rife v. One West Bank, F.S.B., 873 F.3d 17, 21 (1st Cir. 2017).  Because the futility of the proposed complaint is sufficient in itself to deny plaintiff's motion for leave to amend, this court need not evaluate the Secretary's remaining arguments.

CONCLUSION

For the foregoing reasons, the Secretary's motion to dismiss (Docket Entry # 18) is **ALLOWED** and plaintiff's motion for leave to amend (Docket Entry # 28) is **DENIED.**


      /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judgeb